No. 1145.—EUGENE LASERE v. EUGENE ROCHEREAU & Co. et al., and EUGENE LASERE v. ANTOINE DELPHINE, et al.

A resident of New Orleans who, shortly after the Federal forces took possession of the city, in 1862, registered himself as an enemy of the United States, and left the Federal lines of military occupation for the insurrectionary districts, cannot be viewed in the light of a person banished or forced away from his domicile against his will and without his consent.

Where a party, whilst residing in New Orleans, executed a mortgage on his property here, and afterwards, by his own voluntary act, leaves the State and remains away for nearly two years, having left no agent in charge of his property, or authorized to represent him, nor housekeeper in possession of his former residence, with no known intention of returning to the State at any future time, he must be regarded and treated by the mortgage creditor as an absentee, who, in a suit against the property mortgaged may cause a curator ad hoc to be appointed to represent the absentee, with whom proceedings may be conducted contradictorily, and the property seized and sold to satisfy the mortgage rights.

The doctrine in the case of Samory v. Montgomery, 19 An. p. 333, reaffirmed.

APPEAL from the Sixth District Court of New Orleans, *Duplantier*, J. *A. & M. Voorhies*, for plaintiff and appellant. *J. Magne* and *C. E. Schmidt*, for E. Rochereau & Co., and A. Dolphini; *Miles Tay-*

lor, for Samuel Moore and Mrs. C. Bullitt and husband, defendants and appellees.

TALIAFERRO, J.  The plaintiff sues to annul a sale made via executiva under the following circumstances: After the taking of New Orleans by the national forces in the spring of 1862, the plaintiff, being what was termed "a registered enemy of the United States," and a resident of the city, received a military order dated May 7, 1863, to leave the parish for the so-called Confederacy before the fifteenth of the month. In conformity with this order, it seems from the evidence, that he went to Mobile about the end of the month of May, 1863, where he continued to reside until that city was captured in April, 1865, at which time he returned to New Orleans. About six months after his departure from New Orleans, in 1863, the defendants being mortgage creditors of the plaintiff, by acts importing confession of judgment, obtained orders of seizure and sale against the mortgaged property, consisting of a house and lot situated in a central part of the city, and after the usual process the property was sold. A curator ad hoc was appointed to represent Lasére, as an absentee; the same person, an attorney at law, acting as curator ad hoc in both cases. In November, 1865, the plaintiff, Lasére, instituted this suit against the defendants to annul the sale of his property in his absence on the ground that he was not an absentee by legal intendment; that his status was that of a resident of New Orleans; that he had no other domicile, and that he constantly had the purpose of returning during his temporary absence. The purchaser of the property was made a party to the suit, and he in turn called the seizing creditors in warranty. Judgment was rendered in favor of the defendants and the plaintiff has appealed.

The prominent question in the case is, did the facts and circumstances existing at the time the proceedings via executiva were taken, legally warrant the appointment of a curator ad hoc?

The argument in behalf of the plaintiff is two-fold: First. That his temporary absence by military compulsion did not affect his residence; and having a residence, and his absence being temporary, a curator ad hoc could not be legally appointed to represent him. Again, that if Lasére, exiled as a registered enemy, became a resident of the insurgent State of Alabama, then the jurisdiction of the Sixth District Court was suspended as to him; he could neither sue nor be sued in that court if there be any efficacy in the Congressional prohibition.

Conceding that at the time in contemplation a person not having a domicile in New Orleans, but resident in one of the insurgent States, and owning property and having creditors in New Orleans, could not be proceeded against by them under the ruling in the Alexander case, and according to the other authorities cited by plaintiff's counsel, because such person would have had no status in the courts of New Orleans and could not have been either plaintiff or defendant, does it follow that another person having a domicile in New Orleans, but who

left that domicile and took up his residence in one of the insurgent States, acquires the same immunity from legal proceedings? His situation would seem to be different from that of the person first supposed. In the one case the immunity arises solely from the operation of rules regulating the condition of war. In the other it proceeds from the act of the individual himself. But it is said that in the case of the plaintiff the absence was compulsory. And yet it appears that his expulsion from the place of his domicile was superinduced by his own voluntary assumption of the status of a registered enemy of the United States, so that primarily, his removal was the result of the free exercise of his own will. There existed no necessity for his absence antecedent to this exercise of his own volition. During his residence in New Orleans, and before this voluntary change of his condition, the plaintiff was under the protection of the laws then in force in the city. The courts were open and legal proceedings going on. He might have occupied the position of plaintiff or defendant in these courts. He was present, and the right of his creditors to enforce the performance of his obligations to them might have been exercised at any time. Can we say that it was in his power to deprive his creditors of that right altogether or to suspend indefinitely its exercise by voluntarily assuming the character of a public enemy and taking up his residence in an insurrectionary State? We cannot so conclude.

But the other branch of the argument seems more confidently relied upon, namely, that he had a domicile in New Orleans, which was never changed, and therefore that he was not an absentee, and Article 3522 paragraph 3, is referred to. We think a fair interpretation of this article does not sustain the broad ground assumed in argument, which in substance is, that so long as domicile continues, representation by a curator *ad hoc* is excluded. This doctrine would lead to consequences plainly unreasonable and repugnant to the fitness and propriety of things. By the statute of 1855, it is provided that a voluntary absence from the State for two years, or the acquisition of residence in any other State of this Union, or elsewhere, shall forfeit a residence within this State. A debtor then leaving property in the State could defy the pursuit of his creditors for that length of time by absenting himself, taking care to leave behind him no agent to represent him, and no person upon whom a citation could be served. The settled jurisprudence of the State ignores the toleration of such an anomaly in the process of the enforcement of the rights of creditors. In the early case, reported in 6 N. S. p. 15, this court commented in decided terms against the admission of such a doctrine and sustained the appointment of a curator *ad hoc* to represent Mr. Livingston, then at the seat of Government of the United States, in attending to his duties as a member of Congress, on the ground that he had left no one to represent him in his absence. Our immediate predecessors had occasion in the case of Samory *v.* Montgomery, 19 An. p. 333, to review at some length this much vexed question of the appointment of a curator *ad hoc* to represent persons absent from the State, and that after an elaborate and exhaustive argument by eminent counsel on each side. The views expressed

by the court in that case are entirely in unison with that referred to in 6 N. S., and the general current of decisions since that time. In the case of Samory *v.* Montgomery, the court remarked: "If the term absentee can only be applied to a person who never had a domicile in the State, or who having had a domicile in the State has left it permanently, and lives permanently beyond its limits, it is plain that such a construction of the term would operate injurious and vexatious delays to creditors seeking to enforce claims against their debtors. On the other hand, not every casual and temporary excursion of a resident from the State can convert him into an absentee, and render him liable to be harassed by his creditor, who, to gratify improper feelings, might resort to unnecessary acts to injure him. But where in a case like the present, the debtor is absent two or three years, has property in the State, but who leaves no housekeeper, or person upon whom a citation can be served, has no agent to represent him, it would be leaving him a large margin for the procrastination of payment of his debts to permit him under such circumstances to plead that he had a domicile in the State and argue his right to personal citation, when for so long a period he was absent and had left no person upon whom a citation could be served. We think such a perversion of terms inadmissible. That the appointment of a curator *ad hoc* in a case like the present, is clearly within the scope and intendment of our law, there can be no doubt. Neither is it in conflict with the spirit of our jurisprudence."

The facts in the case before us are, as we have seen, that Lasére, the plaintiff, left New Orleans about the last of May, 1863, went to Mobile and there resided until April, 1865, a period of near two years; that he left no housekeeper, nor representative of any kind in New Orleans, upon whom process could be served. His notes, secured by mortgage, were due on the seventeenth of February, 1863. It was not until the twenty-fourth of November, of that year, that his creditors instituted proceedings against him. These proceedings throughout seem to have been regular. It is not alleged that fraud, or undue means were resorted to by the creditors to attain an advantage over their debtor during his absence. It is averred that the property sold was worth eighteen thousand dollars and brought only six thousand and fifty dollars. There is no evidence that there was a sacrifice of the property. The creditors were not purchasers and derived no benefit from the sale beyond that of realizing their debts. It was not their fault, if owing to the existence of war there was a depression in the value of property.

In the case of Samory *v.* Montgomery, quoted above, the proceedings were *via ordinaria.* It is in most of its features similar to the present case, from which it differs chiefly in this, that the case before us partakes more of the character of a proceeding *in rem.*

Applying the principles to which we have adverted to the facts of the case at bar, we conclude that the appointment of a curator *ad hoc* was legal and regular.

It is therefore ordered, adjudged and decreed that the judgment of the Sixth District Court be affirmed with costs.

Rehearing refused.

Mr. Justice Howell recused.